FILED
at ___ O'clock & ___ min. ___ M
SEP 1 8 2006
United States Bankruptcy Court
Columbia, South Carolina (26)

ENTERED
SEP 1 8 2006

L. G. R.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Charles Leslie Edmunds, Jr.,<br><br>　　　　　　　　　　Debtor. | C/A No. 06-01602-JW<br><br>Chapter 13 |
| IN RE:<br><br>William Frederick Orris and Julia Pratt Orris,<br><br>　　　　　　　　　　Debtors. | C/A No. 06-01693-JW<br><br>Chapter 13 |

## ORDER RESOLVING OBJECTIONS OF TRUSTEE TO CONFIRMATION

These matters come before the Court upon objections to plan confirmation filed by chapter 13 trustee William K. Stephenson, Jr. ("Trustee"). Pursuant to Fed. R. Bankr. P. 3015 and SC LBR 3015-1, the Court makes the following Findings of Fact and Conclusions of Law.[1]

### FINDINGS OF FACT

1.　　Trustee is the chapter 13 trustee for Charles Leslie Edmunds, Jr. and William Frederick Orris and Julia Pratt Orris (collectively referred to as the "Debtors").

2.　　Debtors are each above the median income and filed for relief under chapter 13 of the Bankruptcy Code, as revised by the Bankruptcy Abuse and Consumer Protection Act of 2005 ("Reform Act"). See Pub L. No. 109-8 (2005) (codified in scattered sections of 11 U.S.C.).

3.　　Pursuant to Fed. R. Bankr. P. 1007, Debtors each completed Official Form B22C, used by chapter 13 debtors to calculate income and certain expenses allowed by 11 U.S.C. § 707(b)(2) (hereinafter the "Means Test").

4.　　Trustee opposes confirmation of Debtors' plans on grounds that Debtors are not committing their "projected disposable income" to their proposed plans and that Debtors' plans were not

---

[1]　　To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

proposed in good faith. Trustee's primary argument is that Debtors are improperly deducting from their disposable income payments for certain secured debts that will be treated as unsecured debts in their proposed plans and that Form B22C, filed in each of these cases, does not accurately reflect Debtors' actual expenses, reflected on Schedule J, and thus their available income for distribution to unsecured creditors.[2] Debtors each contend that they are only required to pay to unsecured creditors the amount determined by 11 U.S.C. § 1325(b)(2) and (3),[3] as calculated by strictly using Form B22C.

5. Debtors each reflect in their Form B22C that they have a minimum amount or no disposable income for payment to unsecured creditors. Trustee challenges Debtors' expenses by disallowing certain expenses claimed on Debtors' Forms B22C, which are neither applicable expenses allowed by the Means Test nor actual expenses with reference to Debtors' Schedules J.

6. The adjustments to Debtors' expenses proposed by Trustee would appear to result in projected disposable income sufficient to pay Debtors respective scheduled unsecured creditors in full.

## CONCLUSIONS OF LAW

These objections require the Court to interpret § 1325(b) and determine whether the statute mandates the use of Form B22C to determine "projected disposable income,"[4] or whether debtors are required to devote more, or, in some cases, less payments to unsecured creditors under a plan than the mathematical calculation yielded by the form. The objections also raise the application of good faith as a condition for confirmation of the plans in these post Reform Act cases.

---

[2] For example, the Orrises will either surrender or value their four vehicles in their plan; however, on Form B22C they deduct all contractually due payments on these vehicles from their disposable income. The Orrises also take a double deduction in their form for their rental payments. Edmunds takes a full deduction for property that he will surrender or value and seeks to claim an ownership expense for owning a second vehicle when in fact he is surrendering his second vehicle in his proposed plan. Certain of Edmunds' actual expenses in his Form B22C are also not consistent with the same category of expenses disclosed in his Schedule J.

[3] Future references to the Bankruptcy Code shall be made by section number only.

[4] Traditionally, "projected disposable income" has been determined by using "a debtor's present monthly income and expenditures and extending those amounts over the life of the plan." See In re Solomon, 67 F.3d 1128, 1132 (4th Cir. 1995) (citations omitted).

## I. EXISTING AUTHORITY

Section 1325(b)(1)(B) requires Debtors to use all of their "projected disposable income" to pay unsecured creditors during the applicable commitment period. See In re Cushman, C/A No. 05-44954-JW, slip op. at 11-12, ___ B.R. ___, 2006 WL 2529575 (Bankr. D.S.C. Apr. 6, 2006) (interpreting "applicable commitment period" as a temporal requirement that requires debtors to perform in a plan for a period of time). That section provides in relevant part:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan ...
> (B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B) (emphasis added).

"Disposable income," for above median income debtors,[5] is defined as a debtor's "current monthly income," also a defined term under § 101(10A),[6] less amounts reasonably necessary "to be expended" as determined by § 707(b)(2)(A) and (B). See 11 U.S.C. § 1325(b)(3). To achieve confirmation, Debtors are also required to propose their respective plans "in good faith and not by any means forbidden by law." See 11 U.S.C. § 1325(a)(3). This Court has previously questioned whether a debtor is in compliance with § 1325(a)(3) merely by complying with § 1325(b)(1). See Cushman, 2006 WL 2529575 at *6, fn 6.

Some courts have found that plans which use a "disposable income" figure calculated by using Form B22C meet the § 1325(b)(1)(B) requirements, and that a debtor meets the required elements of good faith by proposing a plan that commits such an amount to his unsecured creditors. Other courts

---

[5] The majority of courts have found that Schedules I and J may be used for below median income debtors to determine "projected disposable income." See In re Dew, 344 B.R. 655 (Bankr. N.D. Ala. 2006); In re Schanuth, 342 B.R. 601 (Bankr. W.D. Mo. 2006) (using current monthly income less debtor's expenses on Schedule J); In re Kibbe, 342 B.R. 411 (Bankr. D.N.H. 2006).

[6] "Current Monthly Income" is defined as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month..." preceding the petition date. 11 U.S.C. § 101(10A).

3

have found that the definitional instructions in § 1325(b) modify the calculation of the Means Test and that debtors should use projected income and expenses to determine their projected disposable income. There are essentially three schools of thought adopted by cases in other jurisdictions that address the issue.

### A.  Mechanical Application of the Means Test

Some courts have found that the statutory language used by Congress dictates that a debtor is only required to repay unsecured creditors the amount determined by Form B22C, without regard to the actual ability of the debtor to pay. See In re Barr, 341 B.R. 181 (Bankr. M.D.N.C. 2006); In re Alexander, 344 B.R. 372 (Bankr. E.D.N.C. 2006); In re Guzman, 345 B.R. 640 (Bankr. E.D. Wis. 2006). In each of these cases, the debtors were above median income and each had actual disposable income, according to their filed Schedules I and J, which they could have used for payment to unsecured creditors; however, the courts each found that the debtors satisfied § 1325(b) by applying the amount of disposable income reflected on their Form B22C, which in all cases was a lesser amount than the debtors' actual disposable income. These courts have also held that a debtor who devotes his "disposable income," determined by the form, to his plan also complies with the requirement of good faith by devoting sufficient income to his plan. See Barr, 341 B.R. at 184, Alexander, 344 B.R. at 752.

Within this approach, however, courts have differed on the acceptable methods of using the Means Test to calculate allowable expenses to be deducted from a debtor's income. Compare In re Crittendon, C/A No. 06-10322 C-13G, slip op., 2006 WL 2547102 (Bankr. M.D.N.C. Sept. 1, 2006) (clarifying Barr and finding expenses must be determined on the effective date of the plan and therefore debtors could not deduct from income those payments that would not be made in the plan) with In re Oliver, C/A No. 06-30076RLD12, slip op., 2006 WL 2086691 (Bankr. D. Or. Jun. 29, 2006). In Oliver, the court rejected the approach proposed by the Trustee and found that debtors are not required to add income back to their disposable income merely because the debtors were avoiding certain liens or were surrendering property in their plan and thus would not be paying the debts as secured debts over the

4

term of the plan. See In re Oliver, 2006 WL 2086691 at *3 (citing In re Walker, C/A No. 05-15010-WHD, slip op., 2006 WL 1314125 (Bankr. N.D. Ga. May 1, 2006) (interpreted § 707(b) in a chapter 7 and finding debtors may deduct, from current monthly income, payment on debts for property that the debtors will surrender in their chapter 7). But see In re Grady, 343 B.R. 747, 751 (Bankr. N.D. Ga. 2006) (finding, in the same District as Walker, that in a chapter 13 the court should give meaning to the word "projected" to determine a debtor's ability to make payments in a chapter 13). Alexander and Guzman did not address the issue of the applicability of certain expenses, thus Oliver, an unpublished opinion, appears to be the only court applying the strictest application of the mechanical approach.

### B. Means Test is Presumptively Correct

In an effort to give meaning to the definition of "disposable income" and also recognize the economic reality that a debtor's current and future financial situation may be different from the income reflected in Form B22C, the court in Jass found that the Form B22C is a starting point to determine "projected disposable income." See In re Jass, 340 B.R. 411, 415 (Bankr. D. Utah 2006). The debtors in Jass experienced a decrease in income just prior to the filing of their chapter 13 bankruptcy. The court found that there is a presumption in favor of using Form B22C to determine projected disposable income; however, the debtors could rebut the presumption upon showing that this amount does not correctly represent the debtors' budget projected in the future. See id. at 416. In reaching this conclusion, the court allowed the debtors to rely upon Schedules I and J to demonstrate that their current financial situation was different than that reflected in their Form B22C.[7] The court noted that rebutting the presumption in favor of using Form B22C is the exception to the general rule of using this form to determine disposable income. See id. at 419. The court determined that this interpretation provided meaning to the word "projected" and produced a result consistent with the policy of providing debtors with a fresh start. See id. at 417-418.

---

[7]    Jass did not address whether a trustee or creditor could compel a debtor to pay more than the amount listed on Form B22C if the debtor's financial situation was better than that reflected in the form. Some commentators presume that the Jass court would allow such a result. See e.g., Kevin R. Anderson, *Disposable Income vs. Projected Disposable Income: Identical Twins or Distant Reatives?*, NACTT Quarterly, July-Sept. 2006, at 16.

5

C.    **Modified Means Test**[8]

The majority approach does not follow the strict interpretation of § 707(b)(2) set forth in <u>Oliver</u> but rather requires a debtor to calculate his actual expenses, allowed by the Means Test, within the context of the debtor's chapter 13 plan. <u>See</u> <u>In re Love</u>, C/A No. 06-10125-WRS, slip op., ___ B.R. ___, 2006 WL 2536447 (Bankr. M.D. Ala. Aug. 30, 2006) (disagreeing with <u>Oliver</u> and finding expenses must be determined according to debtor's treatment of claims in the plan); <u>In re Johnson</u>, 346 B.R. 256 (Bankr. S.D. Ga. 2006) (noting that certain expenses under the Means Test must be actual expenses); <u>In re Demonica</u>, 345 B.R. 895 (Bankr. N.D. Ill. 2006) (finding debtor was limited to the national standard for housing expenses); <u>In re Renicker</u>, 342 B.R. 304, 310 (Bankr. W.D. Mo. 2006) (finding projected expenses are used to determine projected disposable income); <u>In re McPherson</u>, C/A No. 06-60243-13, slip op. (Bankr. W.D. Va. Jul. 31, 2006) (finding that debtors may not deduct the full amount of a secured claim from their monthly income when such a claim will be valued in the debtors' plan). Under this approach, courts have found that the calculation of expenses under the Means Test should correlate to a debtor's treatment of debts under his plan and, for those expenses that are actual expenses, the debtor must demonstrate that the expense is actual, reasonable, and necessary. <u>Demonica</u>, 345 B.R. at 900-902, <u>Johnson</u>, 346 B.R. at 267-268; <u>Renicker</u>, 342 B.R. at 310; <u>In re McPherson</u>, slip op. 14-15.

## II. STANDARD FOR STATUTORY CONSTRUCTION

The plain meaning of an unambiguous statute governs, barring exceptional circumstances. <u>See</u> <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (finding there is a "strong presumption that Congress expresses its intent through the language it chooses."); <u>Wachovia Bank, N.A. v. Schmidt</u>, 388 F.3d 414, 416 (4th Cir. 2004). "Courts must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or

---

[8]    Though this approach to expenses is the same approach that the <u>Barr</u> court adopted in <u>Crittendon</u>, the Court differentiates between the two camps as courts in this third camp have often interpreted the income component of "projected disposable income" as a forward looking concept. <u>See</u> <u>Demonica</u>, 345 B.R. at 900.

6

superfluous." Discover Bank v. Vaden, 396 F.3d 366, 369 (4th Cir. 2005) (citations omitted). Courts may resort to legislative history to determine the meaning of an ambiguous statute. See U.S. V. Ron Pair Enters., Inc., 489 U.S. 235, 242, 109 S.Ct. 1026 (1989). The legislative history of a statute may also be considered when the application of a statute's plain meaning produces a result demonstrably at odds with the intention of the drafters. See id.

## III. INTERPRETATION OF "PROJECTED DISPOSABLE INCOME"

The determination of "projected disposable income," used by § 1325(b)(1)(B), requires the Court to inquire into two matters. The Court must determine Debtors' income and, from this income, what portion of it is disposable based upon "amounts reasonably necessary to be expended" as determined by the Means Test. See 11 U.S.C. § 1325(b)(2) and (3). Since Debtors' incomes have not significantly varied in the six months leading up to the petition dates, Debtors' incomes are not the predominant issue in these cases and therefore the Court shall first address the expense component of projected disposable income.

The Court disagrees with the mechanical application of the Means Test as set forth in Oliver and finds that the expense component of "projected disposable income" should be a reflection of Debtors' applicable or actual projected expenses allowed by the Means Test.[9] See Solomon, 67 F.3d at 1132 (the

---

[9] This result is consistent with the legislative history for the reform Act. In the legislative history, Congress indicated four factors supporting bankruptcy reform. Included in this list was "the present bankruptcy system has loopholes and incentives that allow and- sometimes- even encourage opportunistic personal filings and abuse." H.R. Rep. No. 109-31(I), at 5 (2005). If the mechanical application of the Means Test controlled, without consideration of projected income and expenses, then there would be greater potential for "opportunistic personal filings." A debtor could time his filing so as to coincide with certain financial life events, such as a return to work after a period of unemployment, in order to circumvent paying his unsecured creditors their actual disposable income. Such an outcome is not consistent with the intent of Congress in amending the Bankruptcy Code and reducing opportunistic personal filings and the purpose of the Reform Act of deterring abuse. See id. at 47 (stating "S. 256 is intended to improve the bankruptcy system by deterring abuse..."). Congress also expressed concern that some bankruptcy debtors, who are able to repay "a significant portion of their debts," were not doing so under the old law. See id. at 5. The interpretation of "projected disposable income" set forth in Oliver appears to produce a result at odds with the intent of Congress in that it allows can-pay debtors to discharge their unsecured debts without devoting any income from their surplus funds to this class of creditors. The Court believes the interpretation reached in McPherson, Renicker, and this opinion is consistent with Congressional intent in that it maximizes the amount of a debtor's available income for repayment to creditors and gives meaning to allowed categories of income and expenses set forth by § 1325(b)(2) and (3). See also, In re Gress, 344 B.R. 919, 922 (Bankr. W.D. Mo. 2006) ("Arguably... a mechanical test such as that argued by the Debtors should be applied here. As can be seen, however, the use of the Means Test in this fashion allows debtors to propose plan payments based on a sort of parallel universe, which sometimes has little or nothing to do with their actual

7

court must determine disposable income by determining what portion of income is disposable pursuant to statutory definition). Congress has mandated that courts allow debtors those categories of expenses recognized under the Means Test so long as those expenses are "reasonably necessary" and "to be expended." See 11 U.S.C. § 1325(b)(2) and (3). The word "projected" is relevant to determine allowed expenses because "projected" modifies "disposable income," which is a computation of both income and expenses. See McPherson, slip op. at 8-9. Renicker, 342 B.R. at 309 (holding "the plain language of § 1325(b)(2) unambiguously indicates that prospective- not historical- expenses are to be used to calculate disposable income."). The phrases "to be received in the applicable commitment period" and "to be expended" are also relevant because they are a clear indication that Congress intended the courts to determine "projected disposable income" as of the petition date forward. See Renicker, 342 B.R. at 309. Finally, § 707(b)(2)(A) divides allowed expenses into two categories- those expenses that are "applicable" and those expenses that are "actual." See Demonica, 345 B.R. at 901-902. Applicable expenses are those standard expenses set by IRS guidelines. See id. Actual expenses must be determined with reference to Schedule J and a debtor's treatment of debts in his proposed plan.

Based upon the foregoing, the Court finds that the expense allowance provided by § 1325(b)(3) is a forward-looking concept and is not strictly determined by the mathematical calculation of Form B22C, as proposed by Debtors. Though Debtors determination of certain expenses may meet the requirements of Form B22C, it is not a correct application of the Means Test to their chapter 13 cases. As stated below, under either the mechanical approach, as applied in Crittendon- in contrast to Oliver, or the modified approach to income and expenses, as applied in Demonica, Trustee's objections are sustained because Debtors have not properly calculated their expenses under the Means Test within the context of their chapter 13 cases. This approach is not a modification as to how debtors complete the income or expense portions of Form B22C but rather this approach is merely the application of the

---

situation. For that reason, the courts in this district have previously found that Congress could not have intended a purely mechanical application of the Means Test to determine the amount above-median debtors are required to pay to unsecured creditors.").

8

Means Test viewed through the lens of § 1325(b) and Congress's instruction that the courts should "project" disposable income, based upon the disposable income to be received during Debtors' respective plans.[10]

## IV. APPLICATION OF LAW TO DEBTORS' CASES

Section 707(b) sets forth two broad categories of allowed expenses- applicable expenses and actual expenses. "Applicable" expenses are not necessarily a debtor's actual expenses but are those expenses that are presumptively reasonable, determined by referencing IRS guidelines. See 11 U.S.C. § 707(b)(2)(A)(ii)(I), Fuller, 346 B.R. 472, 484 (Bankr. S.D. Ill. 2006). Some of these expenses may be adjusted upward, if a debtor can demonstrate that his actual expense exceeds the amount allotted by the IRS. See 11 U.S.C. § 707(b)(2)(A)(ii)(V). In these cases, Debtors are entitled to take the full deduction of applicable expenses; however, the Court finds that an expense is not "applicable" for determination of projected disposable income if the subject property, such as the second automobile in Edmunds' case, is being surrendered in Debtors' proposed plans because it is not an amount that will be expended during the applicable commitment period. See Renicker, 342 B.R. at 309-310 (finding debtors could not deduct their average expenses for property that they no longer owned). Debtors may also not take a double deduction for an expense accounted for by the IRS standards. See Hardacre, 338 B.R. 718, 726 (Bankr. N.D. Tex. 2006). In these cases, Debtors each deducted expenses from their income that are not applicable and thus the Court sustains Trustee's objections.

A second category of allowed expenses are those "actual" expenses incurred by Debtors, which are designated as "Other Necessary Expenses." Such expenses include certain tax expenses, health care costs, telecommunication costs, and mandatory payroll deductions.[11] The Court also finds that these

---

[10]    Form B22C only indicates that it determines "monthly disposable income under § 1325(b)(2)." The form does not purport to determine "projected disposable income" for purposes of § 1325(b)(1)(B). To the extent that Rule 1007 mandates the use of Form B22C to determine "projected disposable income" and to the extent that form allows Debtors to deduct non-applicable or actual expenses, such as secured payments on valued or surrendered property, the Court finds that the rule must yield to the statute. See In re Henderson, 197 B.R. 147 (Bankr. N.D. Ala. 1996).

[11]    One of the odd results produced by a strict mechanical application of the Means Test is a potential variation between current monthly income, a historic number, and mandatory payroll reductions, which is, pursuant to

9

expenses must be reasonable. See 11 U.S.C. § 1325(b)(3) (stating that expenses allowed under the Means Test calculation in the context of a chapter 13 should be reasonable and necessary). Debtors bear the burden of demonstrating that these expenses are actual, reasonable, and necessary expenses and therefore Debtors' expenses should be considered in light of Debtors' Schedules J and other relevant evidence. See Johnson, 346 B.R. at 267 (findings that debtors bear the burden of proof on expenses). Debtors failed to present persuasive evidence that several of the expenses in their respective Forms B22C, to which Trustee objected, were actual, reasonable, and necessary expenses and therefore the Court sustains Trustee's objections to confirmation.[12]

Lastly, the Court must consider the treatment of Debtors' secured debts. Section 707(b)(2)(A)(iii) generally allows Debtors to deduct their average monthly payments on secured debts based upon those amounts that will be contractual due during the 60 month period following the petition. As discussed in McPherson, a debtor's plan represents a new contract with his creditors and therefore Debtors may only take a deduction to the extent that Debtors are treating these creditors as secured creditors scheduled for payment by Debtors in their chapter 13 plans. See McPherson, slip op. at 11; Crittendon, 2006 WL 2547102 at *4-5 (finding classification of creditors should be determined on the effective date of the plan). This interpretation is consistent with Congress's instruction in § 1325(b)(3) that debtors should determine their disposable income by reducing their income according to those expenses "to be expended." See McPherson, slip op. at 9-10. Therefore, the Court sustains Trustee's objections.

## V. INCOME

Though not central to the outcome of Trustee's objections in these cases, the income component of "projected disposable income" is an issue raised by the parties in their joint stipulation of dispute and

---

§ 707(b)(2)(A)(i)(I), an actual number. A recently unemployed debtor may have substantial current monthly income but no actual significant payroll deductions. The opposite is true for a recently employed debtor.

[12] For example, Edmunds' expenses for health care and health insurance, listed on his Form B22C, differed from the same category of expenses listed on his Schedule J. The Orrises also failed to present persuasive evidence that all of their telecommunication costs were actual, reasonable, and necessary.

10

is also a critical issue in Reform Act cases in this District.[13] Following a similar analysis, as stated above for expenses, the Court believes that the income component of projected disposable income is a forward-looking concept and the Court adopts the majority approach regarding income as set forth in Hardacre and Demonica and disagrees with the approach of Barr and Alexander.[14] See Hardacre, 338 B.R. at 722-723, Demonica, 345 B.R. at 900. See also, Grady, 343 B.R. at 752 (finding income should be considered at the time of confirmation); In re Risher, 344 B.R. 833, 836 (Bankr. W.D. Ky. 2006) (finding projected disposable income must be based on anticipated income); Fuller B.R. at 482-483 (finding that income component of projected disposable income should be made with reference to Schedule I); In re Foster, 2006 WL 2621080, *4 (Bankr. N.D. Ind. Sep 11, 2006) (finding Form B22C is the starting point but does not necessarily determine projected disposable income).

The strict use of "current monthly income" to determine the amount to be paid in a plan to unsecured creditors ignores that Congress used the word "projected" to modify "disposable income" and ignores the language in § 1325(b)(1) which indicates that a court is to determine the income "to be received" during the applicable commitment period. Because the Court is required to supply the plain meaning to the words used by Congress in interpreting this statute and is required to give meaning to every word used, the Court finds that "projected disposable income" is not limited to a debtor's pre-petition income average under Form B22C."[15]

---

[13] The Orrises' Schedule I income is slightly less than their Form B22C income. Edmunds' Schedule I income is slightly more than his Form B22C income. In his memorandum in support of his objections, Trustee proposes to use Debtors' Form B22C income after reducing it by non-reoccurring income, such as Debtors' tax refunds.

[14] This approach and the approach in Jass each recognize that "projected disposable income" is a forward looking concept based upon the plain language used in § 1325(b). The income portion of Form B22C may be relevant but not controlling for purposes of § 1325(b)(1)(B), if a debtor has a significantly different prospect of income during the applicable commitment period than the debtor had prior to the petition date.

[15] Section 1325(b) is instructive as to how projected disposable income is calculated in that it defines income and provides which expenses will be allowed in determining Debtors' actual disposable income. See Hardacre, 338 B.R. at 723. The income component of "projected disposable income" should be accurately reflected on Debtors' Schedules I, as these Debtors do not receive any benefits that would be excluded from the definition of "current monthly income." Trustee may also take into account certain irregular income projected to be received during the applicable commitment period, such as Debtors' projected income tax refunds, to increase Debtors' income reflected in their schedules. See Risher, 344 B.R. at 836.

11

"Projected" is defined as "to calculate, estimate, or predict (something in the future) based upon present date ...." AMERICAN HERITAGE COLLEGE DICTIONARY 1094 (3d ed. 1993). "To be received" indicates that Congress intended the courts to determine a debtor's disposable income based upon that income that debtor will receive during the applicable commitment period and not solely based upon the debtor's pre-petition income average. Congress intentionally used the phrase "projected disposable income," a phrase not defined by the Bankruptcy Code but previously used by Congress in § 1325(b) prior to the Reform Act and interpreted by the Fourth Circuit. See BFP v. Resolution Trust Corp., 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1993) (stating "Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another...."); Solomon, 67 F.3d at 1132. The Court finds the logic of Demonica and Hardacre persuasive in that this phrase has a different meaning than mere "disposable income." See Demonica, 345 B.R. at 900; Hardacre, 338 B.R. at 723; 8 Lawrence P. King, Collier on Bankruptcy, ¶ 1325.08[5][a], at 1325-61 (15th ed. 2005) (noting that the use of historic income figures to determine income for purposes of § 1325(b)(1)(B) directly contradicts language in § 1325(b)(1)(B) referring to projected disposable income). To give meaning to every word of the statute, the statute directs that debtors must determine projected disposable income in light of the income "expected to be received in the applicable commitment period beginning on the date that the first payment is due under the plan." 11 U.S.C. § 1325(b)(1)(B). Thus, the Court finds that the income component of "projected disposable income" relates to a debtor's actual income expected to be received during a five-year plan.[16]

---

[16] This interpretation of § 1325(b) is also consistent with the requirements of plan feasibility and Debtors' ability to make amendments to their plan. See Fuller, 346 B.R. at 483 (questioning the utility and fairness of freezing a debtor's income at a certain point in time where such a representation of income may not be accurate during the applicable commitment period); Grady, 323 B.R. at 752 (finding that flexibility in determining disposable income is consistent with a debtor's ability to amend his plan). Although § 1325(b) does not apply to amended plans, the Means Test calculation could preclude amendment under the factor of good faith if the reasoning in Alexander was adopted. See Alexander, 344 B.R. at 751 ("So long as the debtor calculates the projected disposable income with specific reference to the new definition of disposable income and commits that projected disposable income to pay unsecured creditors for the applicable commitment period, she is in good faith compliance with the Code."). The strict mechanical application of the Means Test would also mandate that debtors propose patently unfeasible plans if there is a downturn in a debtor's financial fortune shortly before the petition.

For a debtor, whose income does not vary significantly between six months pre-petition and the petition date, there is very little impact on projected disposable income regardless of the use of the mechanical or modified Means Tests. However, if strictly using the mechanical test, a significant and sudden change in income during this period, not an uncommon event leading up to some bankruptcy filings, may produce results not intended by Congress. Two common examples are worth considering. Take for instance a debtor who was a highly paid executive for five months of the pre-petition period and has a sudden and severe loss of income due to a heart-attack or some other medical calamity, which leaves him unemployed and with little or no income. A strict mechanical approach to determine projected disposable income may require significant payments in a chapter 13 when in fact the debtor actually has little present ability to pay. In another example under the strict mechanical approach, a mill worker, who is laid off for most of the six month pre-petition period but reemployed near the time of bankruptcy, may be required to pay little or nothing to his unsecured creditors even though he has an actual ability to pay. Without examining actual income, the first debtor may not achieve relief, while the second debtor may achieve confirmation without paying creditors. These are not the results intended by Congress and therefore the Court finds Debtors' actual incomes relevant in determining "projected disposable income." See H.R. Rep. No. 109-31(I), at 5 (2005) (noting that the Reform Act is designed to deter abuse).

## VI. Good Faith

Trustee also opposed confirmation on grounds that Debtors did not propose their plans in good faith as required by § 1325(a)(3). In amending the Bankruptcy Code, Congress left § 1325(a)(3) intact and further emphasized the requirement of good faith by now requiring that courts find that a debtor acted in good faith in filing the petition. See 11 U.S.C. § 1325(a)(7). In interpreting § 1325(b), the Court is called upon to construe the language used within the broader context of the statute as a whole. See Coleman, 426 F.3d 719, 725 (4th Cir. 2005).

13

Some courts have found that a debtor who meets the best efforts test of § 1325(b) also satisfies certain elements of good faith under § 1325(a)(3). See Barr, 341 B.R. at 184 (determining § 1325(b) controls whether a debtor is devoting sufficient income to their plan); Alexander, 344 B.R. at 752 (in accord). But see, Johnson, 346 B.R. at 264 (finding § 1325(b) alters good faith but does not eliminate a good faith inquiry into the sufficiency of income). This Court finds that the strict mechanical application of the Means Test does not necessarily satisfy Debtors' burden of demonstrating good faith in the proposal of their plans, including whether they are devoting sufficient income to their plan. See Solomon, 67 F.3d at 1134 (remanding a case to the bankruptcy court to consider whether debtor's plan was proposed in good faith); In re Sellers, 285 B.R. 769, 773, fn. 4 (Bankr. S.D. Ga. 2001) (finding that a debtor who meets the "disposable income" test does not nullify any further consideration of substantiality of repayment as an element of good faith and stating "[t]he better view is that good faith may still include substantiality of repayment as part of the totality of circumstances analysis. After a debtor meets the good faith test under this standard, Congress then required a minimum payment as measured by the debtor's disposable income. If debtor's payments fall below this floor, the plan cannot be confirmed even if debtor's good faith and honesty are unquestioned."); In re Reyes, 106 B.R. 155, 156 (Bankr. N.D.Ill 1989) (holding that § 1325(b) merely prohibits the Court from raising a debtor's disposable income *sua sponte* and finding that debtor must meet the requirements of § 1325(a) and, if the trustee objects, the requirement of § 1325(b)).

Determining whether a plan is proposed in good faith is based upon the totality of the circumstances. See Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982). In Deans, the Fourth Circuit sets forth a nonexclusive list of factors to determine whether a plan has been proposed in good faith. Included in this list is a debtor's current financial situation and percentage of proposed repayment to unsecured creditors. Deans, 692 F.2d at 972. These factors are relevant even if a debtor's plan satisfies § 1325(b). See Solomon, 67 F.3d at 1134 (remanding a case to the bankruptcy court to consider each of the Deans factors notwithstanding the fact that the debtor appeared to meet the

14

requirements of § 1325(b)), In re McLaughlin, 217 B.R. 772, 782 (Bankr. N.D. Tex. 1998) (finding § 1325(b) is not a substitute or alternative for § 1325(a)); Sellers, 285 B.R. at 773 (finding that the better view is that the inquiry under § 1325(b) does not preclude the court from considering substantiality of repayment). Though the Deans court rejected the notion that § 1325(a)(3) requires a debtor to repay a substantial portion of their debts as an element of good faith, the court did not endorse minimum or no repayment plans, finding "Congress never intended, of course, that Chapter 13 serve as a haven for debtors who wish to receive a discharge of unsecured debts without making an honest effort to pay those debts." Deans, 692 F.2d at 972.

Nothing in the legislative history of § 102(h), of Pub. L. 108-9 (2005), clearly indicates that Congress intended to change the existing practice in this Circuit of considering a debtor's actual financial situation at the time of filing or the percentage of proposed repayment as elements of good faith. See Jass, 340 B.R. at 416-417 (discussing the absence of clear legislative history). Courts should not presume that amendments to the Bankruptcy Code alter past bankruptcy practices absent a clear indication from Congress of such intent. See id. (citing Cohen v. de la Cruz, 523 U.S. 213, 221, 118 S.Ct. 1212 (1998)). The language of the statute and the available legislative history each indicate that Congress did not intend a wholesale departure from prior bankruptcy practice. As discussed herein, Congress did not clearly make "disposable income" and "projected disposable income" synonymous based upon the language used in § 1325(b). Congress also indicated a clear intent to curb opportunistic filings and its displeasure with the practice of allowing debtors, who are able to repay their debts, to avoid their obligations to creditors. See H.R. Rep. No. 109-31(I), at 5 (2005). These are indications that Congress intended to leave intact the past bankruptcy practice of considering a debtor's projected financial situation for purposes of §§ 1325(a)(3) and 1325(b)(1). Therefore, the Court finds that the Deans factors are each still relevant in cases filed after the effective date of the Reform Act.

Consideration of a debtor's current and projected financial situation in these cases also coincides with the Reform Act's treatment of below median income debtors. These debtors are not required to

determine expenses on Form B22C and thus they do not reach a "disposable income" figure under the form. Most courts have found a below median income debtor determines "projected disposable income" by using the debtor's Schedules I and J. See e.g., Kibbe, 342 B.R. at 415. If the Means Test were to eclipse the application of traditional elements of good faith for an above median income debtor, then below median income debtors- debtors arguably least able to pay- would be subject to a different and, in many instances, a more difficult standard and may be required to pay more than those debtors more able to pay. This result was not intended by Congress. Above median income debtors, like the Orrises, may be able to show negative disposable income on Form B22C and thus, if the Means Test, as applied in Oliver, strictly controls, these debtors may pay nothing to unsecured creditors despite their actual ability to pay. However, below median income debtors, using Schedules I and J to determine their disposable income under § 1325(b), would appear to pay more of what they are actually able to pay to unsecured creditors. See Alexander, 344 B.R. at 746, fn. 2 (questioning whether the basic notions of equal protection require the court to calculate "disposable income" uniformly for below median income debtors and above median income debtors). Interpreting § 1325(b)(1)(B) as a forward looking concept is in harmony with the requirement of good faith under § 1325(a)(3) and is consistent with the cannon of statutory construction that the Court should construe the statute as a whole. Coleman, 426 F.3d at 725; Grady, 343 B.R. at 751.

Since it appears from Debtors' respective Schedules I and J that they have sufficient projected disposable income to pay a greater distribution to general unsecured creditors than proposed in their current plans and because Debtors' present plans were therefore not proposed in good faith, Trustee's objections are sustained. See Deans, 692 F.2d at 972.

## CONCLUSION

In this Court's view, the statutory construction of § 1325(b), consistent with legislative intent, allows the Court to consider actual income and expenses as indicated in Schedules I and J or by other evidence in considering confirmation. The objections of Trustee to confirmation are sustained and

16

confirmation of Debtors' proposed plans is denied as § 1325(b)(1)(B) requires Debtors to each propose a plan that devotes all of Debtors' projected disposable income to unsecured creditors as determined herein. Debtors shall submit amended plans, consistent with this Order, within ten (10) days of its entry.[17]

**AND IT IS SO ORDERED.**

*/s/ John E. Waites*
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina,
September 18, 2006

---

[17] Due to the importance of consistency in rendering significant decisions under BAPCPA, all bankruptcy judges in this District have reviewed and concur with the result of this opinion.